**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:25-CR-38-4 |
| | § | |
| RIAN GRAHAM | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Rian Graham's ("R. Graham") Motion to Dismiss Count One as to Her or, Alternatively, for a Bill of Particulars and Protective Instructions, with Notice of Joinder in Docket 371 (#376). The Government filed a response (#401). R. Graham filed a reply (#439). Having considered the motion, the Government's response, the reply, the record, and applicable law, the court is of the opinion that the motion should be denied.

I. Background

On June 4, 2025, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment, naming R. Graham and four codefendants.[1] On February 5, 2026, a First Superseding Indictment (#110) was issued, which added three codefendants.[2] On September 2, 2026, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a Second Superseding Indictment (#225), which substantially limited the charges against all eight

[1] The original Indictment charged R. Graham in Count One with Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349, in Counts Two through Six with Bank Fraud, in violation of 18 U.S.C. § 1344, in Counts Seven through Thirteen with Wire Fraud, in violation of 18 U.S.C. § 1343, and in Counts Fourteen and Fifteen with Wire Fraud, in violation of 18 U.S.C. § 1343.

[2] The First Superseding Indictment charged R. Graham in Count One with Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349, in Counts Two through Six with Bank Fraud, in violation of 18 U.S.C. § 1344, in Counts Seven through Thirteen with Wire Fraud, in violation of 18 U.S.C. § 1343, and in Counts Fourteen and Fifteen with Wire Fraud, in violation of 18 U.S.C. § 1343.

codefendants, including R. Graham, to a single count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. On September 25, 2026, the Government filed an Amended Notice of Penalty (#277) and Bill of Particulars (#278). On November 9, 2026, Brooke Crawford ("Crawford") filed a Motion to Dismiss Count One of the Second Superseding Indictment as Duplicitous, or, in the Alternative, to Compel Election and for Protective Jury Instructions (#371). On November 11, 2026, R. Graham filed the pending Motion to Dismiss Count One as to Her or, Alternatively, for a Bill of Particulars and Protective Instructions, with Notice of Joinder in Docket 371 (#376). The Government filed a Response to Defendant Rian Graham's Motion to Dismiss (#401) on November 13, 2026. On November 17, 2026, R. Graham filed her reply (#439). Jury Selection and Trial are currently scheduled to begin on November 30, 2026.

## II. Analysis

### A. One Conspiracy

R. Graham argues that "Count One combines in a single charge several separate agreements, and the one act it attributes to [her] is described by the indictment itself as standing apart from the enterprise the Government has charged." Similar to Crawford's Motion to Dismiss (#371), R. Graham identifies three general categories of conduct: (1) the 2019 investment solicitations; (2) the June 2020 Small Business Administration ("SBA") applications; and (3) the 2024 Carolina's Contracting acquisition. R. Graham contends that "[e]ven if the [2019] investor scheme and the [2024] business scheme were one agreement, the indictment would still describe the loan application as something else."

To determine if there is a single conspiracy, the United States Court of Appeals for the Fifth Circuit considers: "(1) the existence of a common goal; (2) the nature of the scheme; and

(3) the overlapping of the participants in the various dealings." *United States v. Shah*, 95 F.4th 328, 361 (5th Cir. 2024) (quoting *United States v. Beacham*, 774 F.3d 267, 273 (5th Cir. 2014)). Regarding the first prong, the Second Superseding Indictment asserts a common goal of personal enrichment "by obtaining money from individual and institutional victims by means of materially false and fraudulent pretenses, representations, and promises." R. Graham counters that this common scheme to defraud fails due to generality because it "could describe any fraud ever committed." Yet, the Fifth Circuit interprets "the 'existence of a common goal' broadly" with "a common pursuit of personal gain" being "sufficient." *Id.* Here, the Second Superseding Indictment sufficiently alleges a common goal of personal gain shared by all the conspirators.

As to the second prong, "if the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect then that supports a finding of a single conspiracy." *Id.* The Government, in its response, highlights that the Mildred Drake Family Trust ("MDFT") is the common scheme from which all the defendants "grifted off" of during the conspiracy. The court finds that the MDFT fraud scheme was advantageous and central to the success of the entire enterprise. The 2019 investment solicitations, 2020 SBA loan applications, and 2024 acquisition all stem from the promotion, maintenance, and masquerade of the MDFT fraud. Specifically, the Second Superseding Indictment alleges that the 2020 SBA applications used "information from the fraudulent enterprise." Other aspects of the scheme, therefore, were also advantageous to the SBA loan aspect. The indictment's reference to a "fraudulent enterprise" does not necessarily detach the 2020 SBA applications from the alleged "enterprise." Therefore, there is sufficient interrelatedness across the three identified categories of conduct to support the charge of a single conspiracy.

Finally, the third prong considers the overlap of the participants. *Id.* "[T]here is no requirement that every member must participate in every transaction to find a single conspiracy." *United States v. Quintanilla*, 114 F.4th 453, 467 (5th Cir. 2024). Instead, "[a] single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal." *Shah*, 95 F.4th at 362 (alteration in original) (quoting *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987)). As the Government explains in its response, Riley Graham "led the conspiracy" and "directed the actions of [Crawford] and Mark Day from June 2019 through October 2024." Allegedly, "[t]hose three defendants conspired together continually for the duration of the enterprise." This information is reflected in the Second Superseding Indictment. The Second Superseding Indictment describes how the remaining co-defendants performed various acts to further the scheme to defraud and leveraged the MDFT fraud. Accordingly, the participants are sufficiently overlapping to support a single conspiracy. The court, thus, finds that the Second Superseding Indictment, as alleged, charges a single conspiracy and is not duplicitous.

R. Graham argues that her conduct, as charged, is not sufficiently connected to the two alleged schemes of the 2019 investment solicitations and 2024 acquisition. Instead, she singles out that the "only description of anything she did is overt act (i)."[3] R. Graham maintains that the overt act, as alleged, "does not tell . . . which agreement she is charged with joining when the indictment's description of the agreement leaves her out." Yet, as the Government and R. Graham

---

[3] The Second Superseding Indictment identifies overt act (i) as follows: "On or about June 26, 2020, Rian Graham wired or caused to be wired to the SBA an Economic Injury Disaster Loan Program application that contained fraudulent representations including S.M.'s misappropriated personal identification information."

acknowledge, the Government is not required to allege or prove an overt act for a charge under 18 U.S.C. § 1349. *United States v. Hoffman*, 901 F.3d 523, 542 n.10 (5th Cir.) ("[S]ection 1349 conspiracy does not require an overt act." (citing *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017))), *as revised* (Aug. 28, 2018). Furthermore, the court finds that the Second Superseding Indictment charges only one conspiracy. Thus, R. Graham's challenge that "[o]vert act (i) leaves a great deal unsaid" is immaterial.

Moreover, R. Graham's claim that she was not involved in the 2019 investment solicitations or 2024 acquisition is irrelevant. As the Fifth Circuit has observed:

> "It is not crucial to the existence of a conspiracy that each conspirator participate in every phase of the criminal venture. Nor is it necessary for each conspirator to have knowledge of the identity and role of each of his coconspirators. The unity essential to a conspiracy is derived from the assent of its members to contribute to a common enterprise."

*United States v. Merida*, 765 F.2d 1205, 1218 (5th Cir. 1985) (quoting *United States v. Grassi*, 616 F.2d 1295, 1303 (5th Cir. 1980)); *accord United States v. Lopez*, 582 F. App'x 438, 448 (5th Cir. 2014) ("There is no requirement that every member must participate in every transaction to find a single conspiracy."). Indeed, the fact that "different combinations of conspirators participated in different transactions . . . does not prevent all of the transactions from being part of the same series of transactions for purposes of joinder." *Merida*, 765 F.2d at 218. Further, venue in conspiracy cases is proper in any district where the agreement was formed or where an overt act in furtherance of the conspiracy was performed by at least one of the co-conspirators. *United States v. Lee*, 966 F.3d 310, 319 (5th Cir. 2020). The extent of R. Graham's participation, if any, in the alleged conspiracy is a matter for the jury to determine.

Although R. Graham argues that she is prejudiced by the inclusion of the 2019 investment solicitations and the 2024 acquisition in the Second Superseding Indictment, she did not formally request severance pursuant to FED. R. CRIM. P. 14. Nevertheless, because "the indictment's allegations, taken as true, establish a single conspiracy, there can be no inherent prejudice to [R. Graham]." *United States v. Grassi*, 616 F.2d 1295, 1302 (5th Cir. 1980). Moreover, R. Graham has not shown compelling prejudice, which is required for relief under Rule 14. *See Merida*, 765 F.2d at 1219.

Because the court finds that Count One sets forth a single conspiracy, R. Graham's alternative request for jury instructions regarding unanimity is without basis. In any event, a request for jury instructions within a motion to dismiss the indictment is premature.

B. Bill of Particulars

R. Graham, in the alternative, requests a Bill of Particulars from the Government, answering ten questions.[4] Nonetheless, a bill of particulars "is not a matter of right, and the

---

[4] R. Graham requests that the court direct the Government to answer the following questions regarding the Second Superseding Indictment in a Bill of Particulars:

1. Does the Government contend that Rian Graham knew of, agreed to, or took part in the investor scheme described in paragraphs 10, 14(a) through (e), and 15(a) through (g) and (j)?
2. Does the Government contend that Rian Graham knew of, agreed to, or took part in the Carolina's Contracting LLC transactions described in paragraphs 10, 14(f) through (h), and 15(k) through (y)?
3. Does the Government contend that the application described in paragraph 15(i) was submitted under an agreement between Rian Graham and any other person?
4. Apart from the use of S.M.'s personal identifying information, what false or fraudulent representations does the Government contend the application in paragraph 15(i) contained, and what money or property does it contend was the object of the application?
5. How, from whom, and approximately when does the Government contend Rian Graham obtained S.M.'s personal identifying information, and what does the Government mean by "information from the fraudulent enterprise" in paragraph 5?
6. Does the Government contend that Rian Graham filed, or caused to be filed, any loan application other than the one described in paragraph 15(I)?

district court exercises discretion in granting or denying a defendant's motion." *United States v. Davis*, No. H-14-171S-12, 2014 WL 6679199, at *3 (S.D. Tex. Nov. 25, 2014) (citing *United States v. Williams*, 679 F.2d 504, 510 (5th Cir. 1982)). Courts "should only grant a bill of particulars when the information is necessary for the defendant to prepare for trial." *United States v. Quiroz*, No. 421CR00334ALMCAN2, 2022 WL 3223983, at *2 (E.D. Tex. July 15, 2022) (quoting *United States v. Mathis*, No. 4:19-cr-00265, 2020 WL 7409089, at *1 (E.D. Tex. Nov. 3, 2020)), *adopted by* No. 4:21-CR-334, 2022 WL 3223179 (E.D. Tex. Aug. 9, 2022). A bill of particulars is not required if a defendant is otherwise provided with sufficient information to enable her to prepare her defense and avoid surprise. *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991); *United States v. Levergne*, 805 F.2d 517, 521 (5th Cir. 1986). Hence, "if the indictment is sufficient, a district court does not abuse its discretion if it denies a motion for a bill of particulars." *Davis*, 2014 WL 6679199, at *3 (citing *United States v. Beebe*, 792 F.2d 1363, 1366 (5th Cir. 1986)). "Generally, the fact that the requested information may be useful to the defendant does not, alone, establish the need for a bill of particulars." *Davis*, 2014 WL 6679199, at *3 (citing *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)). Instead, the court "must balance the needs of the defendant against the [G]overnment's right not to disclose

---

7. Does the Government contend that Troi Graham's application in paragraph 15(h) and the application in paragraph 15(i) were submitted under a common agreement?
8. Into which account were the proceeds of the application in paragraph 15(i) deposited, is the account "ending in 5843" in paragraph 9(c) the account the Government intends to prove, and what role, if any, does the Government contend the accounts ending in 0560 and 1243 played in the offense?
9. What act does the Government contend Rian Graham, or anyone acting with her knowledge and agreement, committed in the Eastern District of Texas?
10. Apart from the $105,400.00 identified in Docket Number 278, what money or property does the Government contend Rian Graham obtained, directly or indirectly, as a result of the offense charged in Count One?

its witnesses, evidence[,] or legal theories." *United States v. Shults*, No. 3:14-CR-00298-M, 2018 WL 5023779, at *1 (N.D. Tex. Sept. 18, 2018) (first alteration in original) (quoting *United States v. Campbell*, 710 F. Supp. 641, 642 (N.D. Tex. 1989)).

In this case, the court finds that the details requested by R. Graham are not necessary to inform her of the charge against her, to allow her to prepare a defense, or to permit her to invoke double jeopardy. *See United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *Shults*, 2018 WL 5023779, at *1; *United States v. Fatty*, No. CR 17-161, 2018 WL 3708660, at *5 (E.D. La. Aug. 3, 2018). Indeed, the indictment sets forth sufficient information regarding the charged offense such that R. Graham will be able to prepare an adequate defense. The indictment closely tracks the language of the statute at issue. It also appears to be sufficiently detailed to enable R. Graham to challenge any subsequent prosecution based on double jeopardy. Further, R. Graham acknowledges that the Government has provided extensive discovery, including twelve productions. This information, in addition to R. Graham's personal knowledge of the time period and the circumstances surrounding the events charged, convince the court that she will not be surprised at trial. *See Shults*, 2018 WL 5023779, at *1; *Campbell*, 710 F. Supp. at 642 (denying the defendant's motion for a bill of particulars where the government's open-file discovery policy left "very little if anything" that the defendant would not obtain through legitimate disclosure devices). Given the information in the Second Superseding Indictment (#225) and the Bill of Particulars (#278), R. Graham's request for a Bill of Particulars is denied.

III. <u>Conclusion</u>

In accordance with the foregoing, R. Graham's Motion to Dismiss (#376) is DENIED.

SIGNED at Beaumont, Texas, this 19th day of November, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE